**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO, et al., | |
| Plaintiffs, | No. C 10-05051 JSW |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART LEVI STRAUSS & CO'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| PAPIKIAN ENTERPRISES, INC, et al., | |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion for Partial Summary Judgment filed by Levi Strauss & Co. ("Levi Strauss"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court HEREBY GRANTS IN PART AND DENIES IN PART Levi Strauss' motion.

## BACKGROUND[1]

Levi Strauss owns numerous incontestable trademarks for its clothing line, including "LEVI'S®," "501®" and others. (Compl. ¶¶ 16-23; *see also* Docket No. 32-30 (Declaration of Thomas Onda ("Onda Decl."), ¶¶ 1-3, Exs. A-B).)[2] According to the record, Levi Strauss has used the 501® designation as a trademark for its jeans since 1898, and it has spent "an

---

[1] The Court previously set forth many of the facts underlying this dispute in its Order granting in part and denying in part Defendant's motion for summary judgment. (*See* Docket No. 52 (8/24/11 Order at 1:22-3:18).) The Court repeats only those facts that are necessary to resolution of this motion. In addition, unless otherwise noted, all facts are undisputed.

[2] Levi Strauss relies on the Declarations of Thomas Onda and Timothy Cahn, which it previously submitted in opposition to Defendant's motion for summary judgment.

1  enormous amount of money advertising the 501® trademark and has sold several million of
2  pairs per year for many years." (Onda Decl., ¶¶ 4-5, Ex. C; *see also id.* Exs. D-E (examples of
3  print advertising and public recognition of 501® mark).) Levi Strauss attests that, except for
4  sales through its company-owned retail stores and websites, it sells its products only through
5  authorized retailers. (*Id.*, ¶ 9.) Levi Strauss also requires its retailers to abide by a Retail
6  Policies Statement. Authorized on-line retailers of Levi Strauss products are required to abide
7  by additional policies. (*Id.*, Exs. F-G.)

8  On May 26, 2000, Defendant Galoust Papikian ("Papikian") registered the domain name
9  "501usa.com." (Docket No. 62-1, Declaration of Steven Krongold ("Krongold Decl."), Ex. 3
10 (February 14, 2011 Declaration of Galoust Papikian ("Papikian Decl."), ¶10).)[3] Through his
11 website, Papikian sells discontinued or out-of-stock styles of Levi Strauss brand jeans. (*Id.*,
12 (Papikian Decl., ¶¶ 11, 20.) Papikian's website includes visual depictions of a number of Levi
13 Strauss marks, including its Red Tab mark, its Housemark, and the Arcuate mark. (Alban
14 Decl., ¶¶ 1-2, Ex. A (Papikian Depo. at 272:3-25), Docket No. 59-3, Alban Decl., Ex. B
15 (Papikian Depo Ex. 20).)

16 According to Levi Strauss, it learned of Papikian's website, as well as Papikian's use of
17 other domain names that incorporated Levi Strauss marks, in or about May 2003. (Cahn Decl.
18 ¶¶ 1-2; Onda Decl., ¶¶ 12-13.) Between May 2003 and March, 2004, the parties engaged in
19 discussions about Papikian's website and his use of Levi Strauss marks. (*See, e.g.,* Cahn Decl.,
20 ¶¶ 5-6, 8-14, Exs. C, E-G, I.) Levi Strauss claims that, shortly before it filed suit in this case, it
21 reviewed the 501USA.com website and concluded that it had changed radically. (Onda Decl., ¶
22 14; Cahn Decl., ¶ 15.) It is undisputed that Levi Strauss did not file the Complaint in this action
23 until November 8, 2010.

24 The Court shall address specific additional facts as necessary in the remainder of this
25 Order.

---

[3] Although Levi Strauss named Papikian Enterprises, Inc. as a defendant, Papikian has testified that there is no such corporation. (Docket No. 59-1, Declaration of Tali Alban ("Alban Decl."), ¶ 1; Docket No. 59-2, Alban Decl., Ex. A (Deposition of Galoust Papikian ("Papikian Depo.") at 131:2-10); Docket No. 59-18, Alban Decl., Ex. Q (Defendants' Responses to Interrogatories 2-10).)

2

**ANALYSIS**

Levi Strauss moves for summary judgment on the issue of liability for its claims of trademark infringement, on the basis that Papikian will not be able to show he is making "nominative" fair use of Levi Strauss marks. Levi Strauss also moves for partial summary judgment on Papikian's affirmative defense of laches, on the basis that Papikian cannot show he has been prejudiced. In its motion, Levi Strauss states that it has decided to forego damages on its claims in favor of injunctive relief. (*See* Docket No. 59 (Mot. at 1:23-2:1).)

**A.     Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue

3

for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**C.     Levi Strauss Is Not Entitled to Judgment on Liability.**

In its Complaint, Levi Strauss alleges that Papikian has infringed various trademarks by, *inter alia*: (1) using the 501® mark in the domain names for his websites (501USA.com and 501USA.net)[4]; (2) using it in his business name 501USA.com: A Division of Papikian Enterprises and 501USA: Jeans and Accessories; (3) using the Levi Strauss "Tab Device" trademark on and throughout the websites; (4) using the LEVI's® mark throughout the websites; (5) using Levi Strauss trademarks in keyword metatags associated with the websites; and (6) using Levi Strauss trademarks for the purpose of generating search term priority and diverting customer attention to the websites. (*See* Compl. ¶¶ 28, 30 & Ex. A.) It is evident from Levi Strauss' motion, however, that its primary complaint is that Papikian's use of the marks on his website, and its overall look and feel, falsely suggest that he is an authorized on-line retailer of Levi Strauss products. Papikian, in turn, asserts that he is making nominative fair use of Levi Strauss' marks. (Answer at 12:10-11.)

"In cases where a nominative fair use defense is raised, [courts] ask whether (1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota Motor Sales, Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (citing *Playboy Enterprises, Inc. v. Welles,* 279 F.3d 796, 801 (9th Cir. 2002), in turn quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308-09 (9th Cir. 1992)) (hereinafter the "*New Kids* factors"). "A defendant seeking to assert nominative fair use as a

---

[4]     Although Papikian's websites are on-line retail stores, for ease of reference the Court shall refer to them as the websites.

4

defense need only show that it used the mark to refer to the trademarked good[.] ... The burden then reverts to the plaintiff to show a likelihood of confusion." *Id.* at 1182.

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999). Thus, the Ninth Circuit has stated that a court may grant "summary judgment only if no genuine issue exists regarding likelihood of confusion." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). In nominative fair use cases, the *New Kids* factors are designed to evaluate "likelihood of confusion" and

> to address the risk that nominative use of the mark will inspire a mistaken belief on the part of consumers that the speaker is sponsored or endorsed by the trademark holder. The third factor speaks directly to the risk of such confusion, and the others do so indirectly: Consumers may reasonably infer sponsorship or endorsement if a company uses an unnecessary trademark or "more" of a mark than necessary.

*Id.* In other words, a defendant may avail himself of the nominative fair use defense if "the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids*, 971 F.2d at 307-08.

Levi Strauss has not disputed that Papikian could satisfy the first *New Kids* factor. Papikian does not dispute the facts that are material to the second and third factors, *i.e.* that he has used various Levi Strauss marks on and in connection with his domain names and websites. Thus, in order to prevail, Levi Strauss must show that, in light of these facts, no reasonable juror could find other than for it on the second and third *New Kids* factors.[5]

In the *Toyota Motor Sales* case, the Ninth Circuit addressed whether the defendants' use of the domain names – "buy-a-lexus.com" and "buyorleaselexus.com" – qualified as nominative fair use. When it evaluated the second and third *New Kids* factors, the court noted that the defendants previously included copyrighted photographs of the plaintiff's Lexus brand vehicles

---

[5] In order to conduct this analysis, a court looks to the "'reasonably prudent consumer' in the marketplace." *Toyota Motor Sales*, 610 F.3d at 1176. (citing *Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998)). In this case, as in the *Toyota Motor Sales* case, the relevant marketplace would be the online marketplace, "and the relevant consumer is a reasonably prudent consumer accustomed to shopping online[.] ... Unreasonable, imprudent and inexperienced web-shoppers are not relevant." *Id.*

5

1  and one of plaintiff's design marks on their website.  The court stated that these uses of the
2  "stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary and
3  suggested sponsorship or endorsement by Toyota," because the defendants "could adequately
4  communicate their message without using the visual trappings of the Lexus brand." *Id.* at 1181.
5  The court also stated that "those visual cues might lead some consumers to believe they were
6  dealing with an authorized Toyota affiliate.  Imagery, logos and other visual markers may be
7  particularly significant in cyberspace, where anyone can convincingly recreate the look and feel
8  of a ... brand at minimal expense." *Id.*

9  However, because the defendants had changed the look and feel of their website at the
10 time of trial, which included "prominent" disclaimers, in large font, the court concluded that
11 "[r]easonable consumers would arrive at the [defendants'] site agnostic as to what they would
12 find.  Once there, they would immediately see the disclaimer and would promptly be disabused
13 of any notion that the ... website is sponsored by" plaintiff.  *Id.* at 1182.  "Because there was no
14 risk of confusion as to sponsorship or endorsement," the defendants' use of the plaintiff's Lexus
15 mark was fair." *Id.*; *see also Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 351-
16 52 (9th Cir. 1969) (concluding that defendant's use of Volkswagen and VW did not infringe
17 plaintiff's trademarks where defendant also used term "independent" and did not use plaintiff's
18 distinctive logos or lettering to advertise his services).

19 In this case, the domain names 501USA.com and 501USA.net are the type of domain
20 names that the Ninth Circuit has stated could suggest sponsorship or endorsement by the
21 trademark holder, especially where, as here, the "site is used to sell goods of services related to
22 the trademarked brand...." *Toyota Motor Sales*, 610 F.3d at 1178 n. 4 (noting that in such
23 circumstances "a trademark.com domain will ... suggest sponsorship or endorsement and will
24 not generally be nominative fair use"); *see also id.*, 610 F.3d at 1179 ("Sites like trademark-
25 usa.com, trademark-of-glendale.com or e-trademark.com will also generally suggest
26 sponsorship or endorsement by the trademark holder; ... a location modifier following a
27 trademark indicates that consumers can expect to find the brand's local subsidiary, franchise, or
28 affiliate.")

6

1    Although Papikian's logo for the 501USA.com website has evolved over time, a
2  reasonable juror could find that it is reminiscent of Levi Strauss' Housemark.  (*See* Docket No.
3  59-12, Alban Decl., Ex. K; Docket No. 59-15, Alban Decl., Ex. N; Docket No. 59-16, Alban
4  Decl., Ex. O.)  In addition, Papikian does not dispute that he has used the Levi's® mark, the
5  501® mark, as well as the Red Tab mark, the Housemark, and the Arcuate mark throughout his
6  website.  In addition, like the defendants in the *Toyota Motor Sales* case, Papikian has used
7  Levi Strauss' proprietary photographs on his website.  (Alban Decl., Ex O; Docket No. 59-17,
8  Alban Decl., Ex. P.)  These uses of Levi Strauss marks are similar to the type of uses the Lexus
9  mark that the *Toyota Motor Sales* court found were more use than necessary and suggested
10 sponsorship or endorsement by Toyota.  In this case, Papikian "could adequately communicate
11 [his] message without using the visual trappings of the [Levi Strauss] brand."  *Toyota Motor*
12 *Sales*, 610 F.3d at 1181.
13   However, it also is undisputed that Papikian has, in the past, used disclaimers on the
14 501USA.com website, although his website no longer contains this disclaimer.  In the
15 disclaimers, Papikian did state that he was not affiliated with Levi Strauss, although as the
16 Court previously stated those disclaimers were not prominent due to their font size.  (*Compare*
17 Cahn Decl., Ex. A with *id.*, Exs. H, P; Docket No. 59-11, Alban Decl., Ex. J; Alban Decl., Ex.
18 K.)  Moreover, once a consumer arrives at the website, he or she would see "501USA Jeans and
19 Accessories, a division of Papikian Enterprises," which could be construed by a reasonable on-
20 line consumer as an implicit disclaimer that Papikian is affiliated with or sponsored or endorsed
21 by Levi Strauss.  The Court concludes that, based on these facts, a reasonable juror could find
22 that Papikian did not suggest that he was sponsored or endorsed by Levi Strauss.[6]
23   Accordingly, the Court DENIES IN PART Levi Strauss' motion on this basis.
24 //
25 //
26
27   [6]  Indeed, as this Court has previously noted, Levi Strauss has not presented any
   evidence of actual confusion, *i.e.* that any consumers who have visited Papikian's website
28 believe that he is an authorized Levi Strauss online retailer or that he is affiliated with Levi
   Strauss.

**D.     Levi Strauss Is Entitled to Judgment on the Affirmative Defense of Laches.**

Papikian has asserted laches an affirmative defense to each of Levi Strauss' claims. "'Laches is an equitable time limitation on a party's right to bring suit....'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)); *see also Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 1096, 1108 (N.D. Cal. 2008). Levi Strauss argues that Papikian will not be able to meet his burden to show the requisite prejudice to establish this defense.

**1.     Evidentiary Objections.**

In support of his argument that he was prejudiced by Levi Strauss' purported delay in filing suit, Papikian testified that he has expended effort in obtaining a high search ranking and, if he was forced to abandon the domain name 501USA.com, he would have to expend significant amounts of time and money to regain that ranking. (*See* Krongold Decl., ¶ 2, Ex. 1 (Papikian Depo. at 64:3-69:12, 216:11-220:8, 263:23-270:2).) Levi Strauss objects to Papikian's testimony on the basis that the testimony is irrelevant, speculative, and improper lay opinion. (Docket No. 63, Reply Br. at 1-28 (citing Fed. R. Evid. 402, 602, 701, 702).)

Under Rule 701, where, as here, a "witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witnesses, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, *and* (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Papikian testified that he "could speculate all day long," but that he did not know what about his website kept it high in search engine responses. (*See* Krongold Decl., Ex. 1 (Papikian Depo. at 69:3-12).) In addition, this testimony covers subject matter that would be based on technical or other specialized knowledge and, thus, is the subject of expert testimony. Accordingly, the Court SUSTAINS Levi Strauss' objections to Papikian's testimony about search engine priority. It shall not consider this evidence to determine whether Papikian has established prejudice.

Levi Strauss also objects to Papikian's reliance on the declarations that he previously submitted to the Court on February 14, 2011 and April 14, 2011, which are attached as Exhibits

8

3 and 4 to the Krongold Declaration. Levi Strauss contends that they "should be stricken as unreliable, certainly to the extent that they are inconsistent with the admissions made in his deposition," but it does not cite any deposition testimony that contradicts these declarations. Rather, it relies on the fact that in his deposition, Papikian admitted that "he probably did not" read the February 14 Declaration before he signed it. (Alban Decl., Ex. A (Papikian Depo. at 134:1-24).)

In his February 14 Declaration, Papikian attests that "[t]he 501usa.com website barely supports my wife and three children. Issuing an injunction against the use of the domain name or against selling Levi products would be devastating to me and my family since I have no other source of income and no assets other than inventory in stock." (Krongold Decl., Ex. 3 (Papikian Decl, ¶ 25).)[7] In the April 14 Declaration, Papikian provides foundational testimony for various documents produced during discovery. (*Id.*, Ex. 4 (Second Supplemental Declaration of Galoust Papikian, ¶¶ 1-7).) The Court finds that Levi Strauss' objections go to the weight of the testimony contained in the declarations, rather than its admissibility. The Court OVERRULES the objections on this basis.

### 2. Discussion.

The Ninth Circuit has recognized "two chief forms of prejudice in the laches context, evidentiary and expectations-based." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). Papikian's laches defense is premised solely upon "expectations-based" prejudice. (*See*, Krongold Ex. 3 (Papikian Decl., ¶ 25).) "Expectations-based prejudice derives from a defendant '[taking] actions or [suffering] consequences that it would not have, had the plaintiff brought suit promptly.'" *Saul Zaentz*, 627 F. Supp. 2d at 1117 (quoting *Danjaq LLC*, 263 F.3d at 955). The Ninth Circuit has consistently analyzed the issue of prejudice by inquiring "whether, during plaintiff's delay in bringing suit, the infringer developed an identify as a business based on its mark." *Internet Specialties, Inc. v. Milon-DiGiorgio Enters, Inc.*, 559 F.3d 985, 992 (9th Cir. 2009). That is, prejudice must consist of more than mere "expenditures

---

[7] Levi Strauss states that it is not seeking to stop Papikian from selling Levi Strauss brand jeans or from using the marks in a reasonable way to describe them. (Reply Br. at 9 n.4.)

9

1  in promoting the infringed name," because "[l]aches is meant to protect an infringer whose
2  efforts have been aimed at 'build[ing] a valuable business *around its trademark*' and 'an
3  important reliance *on the publicity of [its] mark*.'" *Id.* at 991-92 (quoting 6 McCarthy on
4  Trademarks and Unfair Competition § 31.12) (brackets and emphases as in *Internet Specialties*
5  *West*); *see also Grupo Gigante SA de CV v. Dallo & Co, Inc.*, 391 F.3d 1088, 1105 (9th Cir.
6  2004) (defendant may establish prejudice "by proving that it has continued to build a valuable
7  business *around its trademark* during the time that the plaintiff delayed the exercise of its legal
8  rights") (emphasis added).

9       For example, in the *Grupo Gigante* case, the Ninth Circuit concluded that a defendant
10 established the requisite prejudice when it opened a second grocery store and operated both
11 stores under disputed name for eight years, thereby developing a "valuable business" around its
12 trademark. *Grupo Gigante*, 391 F.3d at 1105.[8]  The Ninth Circuit also has found economic
13 prejudice in connection with a false advertising claim under the Lanham Act, where the
14 defendant "invested enormous resources in tying [the product's] identity to the challenged"
15 claims and concluded that if the plaintiff had filed its lawsuit sooner, the defendant "could have
16 invested its resources in shaping an alternative identity" for the product "in the minds of the
17 public." *Jarrow Formulas*, 304 F.3d at 839-40.

18      Similarly, in the *Saul Zaentz* case, *supra*, the district court found economic prejudice
19 where the defendant "spent tens of millions of dollars on advertising in an effort to build up
20 name recognition and goodwill." *Saul Zaentz*, 627 F. Supp. 2d at 1118.  Likewise, in *Tilamook*
21 *Country Smoker, Inc. v. Tilamook County Creamery Ass'n*, the district court concluded that the
22 plaintiff had shown economic prejudice where it had spent "millions of dollars in promotional
23 activities in an attempt to create a favorable brand image for the name Tilamook Country
24 Smoker," which "occasion[ed] substantial goodwill" for plaintiff.  311 F. Supp. 2d 1023, 1037-
25 38 (D. Or. 2004), *aff'd on other grounds* 436 F.3d 1102 (9th Cir. 2006).  In contrast, in the

---

[8] In the *Grupo Gigante* case, the Ninth Circuit analyzed the laches defense using the six factors set forth in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).  The sixth *E-Systems* factor addresses prejudice by evaluating the "'extent of harm suffered by [the] junior user because of [the] senior user's delay.'" *Grupo Gigante*, 391 F.3d at 1102 (quoting *E-Systems*, 720 F.2d at 607).

United States District Court
For the Northern District of California

*Internet Specialties West* case, the court concluded that the defendant had not shown economic prejudice, because the expenditures had not been aimed at "an investment in the mark ISPWest as the identity of the business in the minds of the public." *Internet Specialties West*, 553 F.3d at 992-93.

It is undisputed that Papikian purchased computers, camera equipment and other good and services in connection with his business, which is the operation of the 501USA.com website. (Alban Decl., Ex. A (Papikian Depo. at 56:9-57:58:23, 189:12-191:25), Exs. H-I; *see also* Krongold Decl., Ex. 1 (Papikian Depo. at 189:12-198:22).) Papikian argues that, but for Levi Strauss' delay in filing suit, he would not have incurred these "capital investments." However, Papikian does not offer any evidence to show how or why these expenditures constitute an investment in 501USA.com as "the identity of [his] business in the minds of the public." *Internet Specialties West*, 553 F.3d at 992.[9] Therefore, the Court finds that Papikian has not met his burden of showing there are genuine issues of material fact in dispute as to whether he suffered economic prejudice.

Accordingly, Levi Strauss is entitled to judgment in its favor on Papikian's laches defense, and the Court GRANTS IN PART Levi Strauss' motion on this basis.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Levi Strauss' motion for partial summary judgment. The pretrial conference remains on calendar on March 6, 2012. It is this Court's practice to send parties to a settlement conference before a Magistrate Judge between the pretrial conference and trial.

If the parties believe that a settlement conference in advance of March 6, 2012 would be useful, they should file a stipulation and proposed order referring this to a Magistrate Judge (either randomly assigned or to a particular judge) for a settlement conference.

---

[9] The Court recognizes that the Ninth Circuit has held that the expenditure of capital investments to expand a business can constitute prejudice. *See Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). However, Papikian also has offered no evidence that these investments were designed to or did expand or increase business for 501USA.com.

11

Finally, the parties are reminded to familiarize themselves with this Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases or, if appropriate, in Civil Bench Cases.

**IT IS SO ORDERED.**

Dated: November 1, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE