**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,, <br><br> Plaintiff, <br><br> v. <br><br> PAPIKIAN ENTERPRISES, INC, et al., <br><br> Defendants. <br> _____/ | No. C 10-05051 JSW <br><br> **ORDER FINDING DEFENDANT IN CONTEMPT OF STIPULATED INJUNCTION AND IMPOSING SANCTIONS AND ATTORNEYS' FEES** |

**INTRODUCTION**

This matter came before the Court upon the motion to find Defendants, Papikian Enterprises, Inc. and Galoust Papikian (collectively "Papikian") in civil contempt, filed by Plaintiff Levi Strauss & Co. ("LS&CO"). LS&CO argues that Papikian has violated various terms of a Stipulated Final Judgment and Permanent Injunction (the "Injunction"). The Court has considered the parties' papers, relevant legal authority, the record in this case, including the parties' supplemental briefing on LS&CO's request for attorneys' fees, and it has had the benefit of oral argument. For the reasons set forth in the remainder of this Order, the Court finds Papikian in contempt and shall impose sanctions in the form of modifications to the Injunction and an award of attorneys' fees.

**BACKGROUND**

The facts underlying this dispute are set forth in previous Orders and shall not be repeated here. On March 21, 2012, the parties attended a settlement conference with Magistrate Judge Bernard Zimmerman. Following that settlement conference, the parties entered into the

1 Injunction. (Docket No. 91-2, Declaration of Gregory S. Gilchrist ("Gilchrist Decl."), Ex. A.)
2 The Court entered the Injunction and vacated the trial date. LS&CO monitored Papikian's
3 compliance with the terms of the Injunction, or lack thereof, and unsuccessfully attempted to
4 resolve the issues presented by this motion with Papikian.

**ANALYSIS**

If a party disobeys a "specific and definite court order" by failing to "take all reasonable steps within the party's power to comply" with that order, it may be held in contempt. *Go-Video v. Motion Picture Ass'n of Am. (In re Dual Deck),* 10 F.3d 693, 695 (9th Cir. 1993). "There is no good faith exception to the requirement of compliance with a court order." *Id.* If, however, a party's actions are based on a "good faith and reasonable interpretation" of the order, it will not be held in contempt of the order. *Id.* Similarly, a party should not be held in contempt based on "a few technical violations where every reasonable effort has been made to comply." *Id.* "Congress has determined that the power to hold a party in contempt is a discretionary power vested in the court whose order has been violated." *Crystal Palace v. Mark Twain,* 817 F.2d 1361, 1364 (9th Cir. 1987). As the party seeking to hold Papikian in contempt, LS&CO must show by "'clear and convincing evidence,'" that Papikian violated the injunction. *Go-Video*, 10 F.3d at 695 (quoting *Vertex Distribution, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).

In this case, LS&CO permitted Papikian to continue to use *501USA.com* as a domain name, email address and a logo, on the following conditions: (1) *501USA.com* would be used "no more than once on each page"; (2) at "the top of each page of the website, Papikian would state: 'Not authorized or sponsored by Levi Strauss & Co.'"; and (3) that Papikian would have a link identified as "Legal Disclaimer" or "Legal Notices" that would take a user to a webpage that contained a further disclaimer that 501USA.com Papikian Enterprises was neither affiliated with nor sponsored or endorsed by LS&CO. (Injunction, ¶ 1.) The parties also agreed to a particular depiction of the *501USA* logo, "so long as it is not materially changed." (*Id.*, ¶ 3.) The depiction in the Injunction shows that the *501USA* logo would be placed above the

2

1 disclaimer "Not authorized or sponsored by Levi Strauss & Co.," which was set in white letters
2 on a black background. (*Id.*)

3 LS&CO submits evidence that Papikian materially changed the logo as depicted in the
4 Injunction, by putting the disclaimer in black font on a blue background. (Gilchrist Decl., ¶¶ 5,
5 7, Exs. C, E.) Papikian ultimately changed the disclaimer to a gold, then white, font on a blue
6 background, but he placed the disclaimer above the logo. (*Id.*, ¶¶ 14-15, 17, Exs. L-M, O.)
7 Further, at some point Papikian introduced an entirely new logo. (*Id.*, ¶ 16, Ex. N.) The
8 screenshots of Papikian's website also show that he uses the *501USA.com* identifier more than
9 once per page. (*See, e.g., id.*, ¶¶ 5, 7-8, Exs. C, E-F.)

10 The terms of the Injunction also precluded Papikian from "[u]sing additional links that
11 contain [LS&CO] trademarks on the www.501USA.com website beyond those that are
12 currently in use, unless the link is necessary to forward a user to a new web page that identifies
13 [a new] category of LEVI'S® brand products. In such a case, only one additional link on each
14 page of the website may be used for each such additional webpage." (Injunction, ¶ 5.) LS&CO
15 submits evidence that Papikian added a number of links that encompass products that were
16 already available and, thus, were not a "new category" of products. (Gilchrist Decl., ¶ 9, Ex.
17 G.)

18 The Court finds that these terms of the Injunction are clear and definite. The Court also
19 finds that LS&CO has presented clear and convincing evidence that Papikian violated those
20 terms. The Court heard argument from Papikian at the hearing, and it finds that these
21 modifications are neither technical nor based on a good faith and reasonable interpretation of
22 the terms of the Injunction. Most notably, with respect to the additional links, Papikian
23 admitted that he added them in order to optimize search results for his website.

24 Having determined that Papikian violated the Injunction and should be held in contempt,
25 the Court turns to the appropriate remedies. LS&CO asks the Court to modify the injunction to,
26 *inter alia*, preclude Papikian from using *501USA.com* as a domain name, trade name, or for any
27 other purpose. (Docket No. 91-18, Proposed Amended Final Judgment and Permanent
28 Injunction.) "Civil contempt is characterized by the court's desire to compel obedience to a

3

1 court order … or to compensate the contemnor's adversaries for the injuries which result from
2 the non-compliance." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 778 (9th
3 Cir. 1983) (citations omitted). To the extent a sanction is intended to be compensatory, it must
4 be based on "the actual losses, sustained as a result of the contumacy." *Shuffler v. Heritage*
5 *Bank,* 720 F.2d 1141, 1148 (9th Cir. 1983).

6 The Court finds that coercive sanctions in the form of modifications to the Injunction are
7 warranted, including modifying the injunction to preclude Papikian from using *501USA* as a
8 domain or trade name. LS&CO has consistently alleged that Papikian infringes its marks,
9 including the "LEVI'S®," and "501®" marks, and that his usage of those marks does not
10 qualify as nominative fair use. The Ninth Circuit has held that an injunction that precluded
11 plaintiffs from using "any ... domain name, service mark, trademark, trade name, meta tag or
12 other commercial indication of origin that includes the mark LEXUS" was overly broad. *See*
13 *Toyota Motor Sales, Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010). However, the court
14 distinguished domain names that consisted of "trademarkusa.com."

15 The court reasoned that the latter type of domain name could suggest sponsorship or
16 endorsement by the trademark holder, especially where, as here, the "site is used to sell goods
17 of services related to the trademarked brand...." *Toyota Motor Sales*, 610 F.3d at 1178 n. 4.
18 That is exactly the case here, and it appears evident from the testimony at the hearing that
19 Papikian continues to use LS&CO marks in order to trade upon LS&CO's goodwill and its
20 brand. Indeed, the fact that Papikian admits that he added new links for products that were not
21 new to the website to optimize his search engine strongly suggests that Papikian is using
22 LS&CO marks more than is reasonably necessary. In addition, unlike the plaintiffs in the
23 *Toyota Motor Sales* case, Papikian has resisted the use of a disclaimer that would be
24 prominently displayed to consumers who arrive at his website. For these reasons, the Court
25 shall enter LS&CO's proposed final amended injunction, with some modifications.

26 LS&CO also asks for attorneys' fees in the amount of $13,261.05, incurred in
27 connection with these proceedings. This Court has the discretion to award attorneys' fees as a
28 remedy for civil contempt, and it finds that an award of attorneys' fees is appropriate in this

4

case, although not in the amount LS&CO requests. *See Perry v. O'Donnell*, 759 F.2d 701, 704-05 (9th Cir. 1985); *Shuffler,* 720 F.2d at 1148. In order to determine the amount of an award for attorney's fees, the Court uses the lodestar method. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Court applies the lodestar method by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *Id.* According to the record, Mr. Gilchrist's billing rate was $607.50, which represents a discount of his normal hourly rate of $675.00, and Ms. Alban's billing rate was $382.50, which represents a discount of her normal hourly rate of $425.00, and the billing rate for Mr. Ferrari, their paralegal, was $216, which represents a discount from his normal hourly rate of $240.00. (Docket No. 102-2, Declaration of Gregory S. Gilchrist, ¶ 5.) Although it is evident that both Mr. Gilchrist and Ms. Alban are experienced in their field, the Court finds these rates excessive for the work done on these proceedings. Thus, the Court will discount their hourly billing rates as follows: $500.00 for time spent by Mr. Gilchrist, $275.00 for time spent by Ms. Alban, and $195 for time spent award fees for time spent by Mr. Ferrari.[1]

The Court has also considered the time spent by the attorneys' and, for the most part, finds it reasonable. However, it has deducted 1.0 hours from the time incurred by Mr. Ferrari on June 8, 2012 and June 19, 20120, and has deducted 1.5 hours from the time Mr. Gilchrist spent on June 12, 2012. Thus, the Court awards LS&CO attorneys' fees in the amount of $9,597.00. Papikian shall pay this amount to LS&CO within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 10, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[1] The Court declines to award any fees for the time spent by Mr. McMahon. (*See* Gilchrist Decl., ¶ 5.c.)

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28